UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **CHRISTOPHER HART**, an Individual residing in the Town of Sanford, County of York, and State of Maine, ) ) ) ) Plaintiff, ) ) v. ) ) **ELDREDGE LUMBER & HARDWARE, INC.**, a Maine Corporation doing business in the Town of York, County of York, and State of Maine, ) ) ) ) ) ) Defendant ) | Case No._____ |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Christopher Hart, by and through undersigned counsel, hereby complains against Defendant Eldredge Lumber & Hardware, Inc. as follows:

### INTRODUCTION

1. This case arises under the Maine Human Rights Act ("MHRA"), 5 M.R.S. § 4571 *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; and the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 *et seq.*

2. This case challenges the Defendant's: (1) unlawful discrimination against Plaintiff on the basis of his disability in violation of the MHRA, the ADA, and USERRA; (2) unlawful retaliation against Plaintiff for requesting a reasonable accommodation for his disability in violation of the MHRA, the ADA and USERRA; (3) unlawful refusal to retain and/or reinstate

1

Plaintiff to his position as a result of his past military service and service-related disabilities in violation of USERRA.

## THE PARTIES

3. Plaintiff Christopher Hart ("Mr. Hart") is an individual residing in the Town of Sanford, County of York, and State of Maine.

4. Defendant Eldredge Lumber & Hardware, Inc. ("Eldredge" or "the company") is a Maine Corporation doing business in Maine and operating in the Town of York, County of York, and State of Maine.

5. At all times herein relevant, Mr. Hart was an employee of Eldredge.

6. At all times herein relevant, Dan Remick was the General Manager of Eldredge and Mr. Hart's supervisor.

7. Eldredge has employed over 100 individuals in each of 20 or more calendar weeks in the current and preceding calendar year.

## JURISDICTION AND VENUE

8. Prior to filing this Complaint, Mr. Hart filed a charge of discrimination with the Maine Human Rights Commission and/or the Equal Employment Opportunities Commission ("EEOC"), and received a notice of right to sue letter from the EEOC on or about September 19, 2014.

9. Venue is proper in this Court because all of the discriminatory practices alleged herein occurred in the County of York and State of Maine.

10. The Court has federal question subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 38 U.S.C. § 4301 *et seq.*

## STATEMENT OF FACTS

11.     Eldredge employed Mr. Hart as a commercial driver from approximately May 8, 2013 to the date of his termination on October 23, 2013.

12.     Eldredge is a lumber and hardware company in York, Maine that employs more than 100 people.

13.     Eldredge terminated Mr. Hart on October 23, 2013 because he requested and went out on an approved three-day medical leave of absence to seek inpatient mental health treatment for his service-related disabilities.

14.     Upon being hired by Eldredge, Mr. Hart disclosed that he was a disabled veteran of the Iraq War.

15.     Mr. Hart enlisted in the Army right after high school and was trained as a combat medic. He was assigned to the 1-14 Infantry Battalion ("Golden Dragons"), 2nd Stryker Brigade Combat Team 25th Infantry Division, Bravo Company HQ Platoon.

16.     Mr. Hart has combat-related diagnoses of post-traumatic stress disorder (PTSD), anxiety, chronic back pain, and knee pain, with an overall Veterans Administration ("VA") disability rating of 60%.

17.     The above conditions, which meet the definition of a disability under the ADA, stem from multiple roadside bombs, ambushes, and explosions in Iraq. Mr. Hart suffered at least 7 separate concussions during these attacks. He furthermore suffered emotional trauma while treating his fellow wounded soldiers as a combat medic. Three days after arriving in Iraq in 2007, Mr. Hart watched a close friend die after a roadside bomb exploded. Seven out of the twenty soldiers in the convoy were injured in the attack. This attack left one of Mr. Hart's best friends so severely wounded that he will never walk or talk again.

18.  Mr. Hart was honorably discharged from the Army in April of 2010.

19.  Based on the traumatic experiences Mr. Hart endured during his deployment, he sought counseling from the VA. He also started taking Effexor for PTSD and anxiety in 2013.

20.  Soon after Mr. Hart began working for Eldredge, the company criticized him for his service-related disabilities.

21.  For example, on June 17, 2013, Elredge's Yard Operations Supervisor, Neil Goodwin, wrote to General Manager Den Remick that Mr. Hart had: "a hard time following instructions" and "anger issues." Mr. Goodwin further stated that Mr. Hart was "not who we want representing this company."

22.  Eldredge further discriminated against Mr. Hart because of his service-related disabilities in the form of chronic back pain and degenerative joint disease.

23.  In an email to Eldredge's human resources representative Ella Richardson on July 24, 2013, Neil Goodwin wrote that Mr. Hart: "has been having issues with unloading trucks by himself. Always wants help, I do not believe we can hire a helper for every driver . . . . we pick things up, we put things down. If I can handle this delivery he could have done it easily."

24.  After Mr. Hart inquired about the availability of employee benefits such as short-term disability, Mr. Goodwin wrote the following in an email about Mr. Hart on October 1, 2013: "He is 'suppose' to have surgery. When he asked me I told [sic] that he would have to wait. I am thinking he wants to sign up thinking he can claim disability while recovering. I will hold with 'no comment'!"

25.  Later in the day on October 1, 2013, Mr. Goodwin wrote the following in an email about Mr. Hart: "Let's see, yesterday's [doctor's appointment] was a biopsy for cancer. Last week was for his wrist and two weeks ago was his back. So you have a choice. You can

not [sic] make this up! We have been giving him loads that do not require much muscle."

26. Eldredge also discriminated against Mr. Hart with regard to his anxiety disorder and retaliated against him when he sought treatment for this disability.

27. Due to undesirable side effects from his anti-anxiety medication (Effexor), Mr. Hart stopped taking this medication in October of 2013.

28. After stopping this medication, Mr. Hart's anxiety symptoms increased significantly. He had panic attacks, mood swings, depression, and trouble eating, sleeping and concentrating.

29. On the morning of October 17, 2013, Mr. Hart drove a delivery truck to Massachusetts to complete an order.

30. Mr. Hart returned to Eldredge around noontime to pick up another delivery in New Hampshire. He saw both Dan Remick and Dan Barnes (the shipping supervisor) at that time, but neither of them mentioned a speeding violation or any other performance issue.

31. At this time, Mr. Hart's anxiety had increased to a point that he did not feel safe. He realized that he needed to get help and therefore called the VA to report his severe anxiety symptoms.

32. The VA told Mr. Hart to check in to the nearest emergency room for treatment and evaluation until he could be transferred to the closest VA hospital.

33. Plaintiff Hart therefore returned to Eldredge and reported directly to Dan Remick's office instead of completing his next delivery.

34. Mr. Hart told Mr. Remick that he did not feel safe given his current mental status, which was the result of his service-related disabilities.

35. Mr. Hart made it clear that he had been instructed to seek emergency medical care

through the VA. He asked Mr. Remick for a temporary leave of absence and Mr. Remick told him to speak with Neil Goodwin.

36. Mr. Hart spoke with Mr. Goodwin and repeated the above information about his mental status. He again requested a medical leave of absence so he could be hospitalized. Mr. Goodwin agreed to Mr. Hart's request, but instructed him to leave a note for human resources representative Ella Richardson.

37. As requested, Mr. Hart left the following note for Ms. Richardson before heading to the emergency department at York Hospital: "Ella, Cleared by Neil I was ok'd to take a temporary leave of absence for mental health reasons. I will be checking myself into the VA in Augusta. Will inform more when up there."

38. Mr. Hart's personnel file contains a "speeding alert" generated by GPS on his vehicle that was purportedly triggered on October 17, 2013.

39. However, the address listed on the GPS is not accurate compared to where Mr. Hart was located on the date and time indicated.

40. Moreover, the speeding issue is pretextual because other named employees, specifically R. Beaulieu and J. Ridlon, were not disciplined in connection with the "speeding alert."

41. York Hospital admitted Mr. Hart overnight on October 17, 2013. Thereafter, Mr. Hart was transferred to the VA Hospital in Brockton, Massachusetts on October 18th, where he remained until October 22, 2013.

42. As promised, Mr. Hart kept Eldredge informed about his expected release from the hospital by leaving voicemails.

43. Mr. Hart missed only three days of work for his medical leave of absence.

44. Mr. Hart had previously requested time off for a minor surgical procedure on October 23, 2013, for excision of a pigmented lesion on his back that could have been cancerous. Mr. Hart had that procedure after being released from the VA hospital, and fully expected to return to work the day after, on October 24th.

45. However, on Wednesday, October 23, 2013, Mr. Hart received a call from Dan Barnes indicating that Dan Remick wanted to speak with him. Mr. Remick then informed Mr. Hart that Eldredge had "rethought" his request for a leave of absence, and the company wanted a "clean slate." Mr. Remick then fired Mr. Hart.

46. Throughout his employment at Eldredge, Mr. Hart's performance met the expected standards of his position. Although he received some forms of employee discipline, these were pretextual examples of Mr. Hart being scrutinized more harshly than other employees because of his disability status and past military service. Mr. Hart was treated differently, more negatively, and disciplined more often than non-disabled, similarly situated employees.

47. Mr. Hart has a record of a disability.

48. Eldredge regarded Mr. Hart as being disabled.

49. Eldredge discriminated against Mr. Hart for having a disability.

50. Eldredge retaliated against Mr. Hart for requesting a reasonable accommodation in the form of medical leave related to his disability.

51. Eldredge failed to accommodate Mr. Hart.

52. Eldredge failed to engage in the interactive process with Mr. Hart.

53. Eldredge discriminated and retaliated against a disabled veteran based on his prior military service and his service-related disabilities sustained while serving his country by denying him retention in employment.

54. Elredge knowingly and willfully violated Mr. Hart's state and federally protected rights.

## COUNT I – DISABILITY DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT
### (42 U.S.C. § 12101 *et seq.*)

55. Plaintiff repeats the allegations contained in Paragraphs 1 through 54 of his Complaint as if fully set forth herein.

56. At all times herein relevant, Plaintiff was a qualified individual with a disability within the meaning of the ADA.

57. At all times herein relevant, Plaintiff was qualified and able to perform the essential functions of his job.

58. In light of the above, Eldredge violated the ADA by failing to accommodate Mr. Hart, failing to engage in the interactive process, and regarding Mr. Hart as disabled.

59. As a result of Defendant's discriminatory actions, Plaintiff has suffered and is entitled to damages, including but not limited to: lost wages and benefits, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Christopher Hart requests that the Court award him damages in the form of lost back pay, front pay, compensatory damages, punitive damages, liquidated damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

## COUNT II – RETALIATION UNDER
## THE AMERICANS WITH DISABILITIES ACT
### (42 U.S.C. § 12101 *et seq.*)

60. Plaintiff repeats the allegations contained in Paragraphs 1 through 59 of his Complaint as if fully set forth herein.

61. In light of the above, Eldredge retaliated against Plaintiff for taking medical leave by terminating his employment.

62. Defendant's termination of Plaintiff was directly related to his request for an accommodation in the form of medical leave.

63. The stated reason for Defendant's termination of Plaintiff was pretext.

64. As further evidence of retaliation and pretext, Defendant did not discipline similarly situated employees who engaged in the same conduct as Plaintiff.

65. Plaintiff has suffered and is entitled to damages, including but not limited to: lost wages and benefits, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Christopher Hart requests that the Court award him damages in the form of lost back pay, front pay, compensatory damages, punitive damages, liquidated damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

## COUNT III – VIOLATION OF THE MAINE HUMAN RIGHTS ACT
### (5 M.R.S. § 4571 *et seq.*)

66. Plaintiff repeats the allegations contained in Paragraphs 1 through 65 of his Complaint as if fully set forth herein.

67. The disability discrimination and retaliation alleged in the above Counts I and II also violate the Maine Human Rights Act.

9

68. As a result of Defendant's violation of the Maine Human Rights Act, Plaintiff has suffered and is entitled to damages, including but not limited to: lost wages and benefits, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Christopher Hart requests that the Court award him damages in the form of lost back pay, front pay, compensatory damages, punitive damages, liquidated damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

## COUNT IV – VIOLATION OF THE UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT
(38 U.S.C. § 4301 *et seq.*)

69. Plaintiff repeats the allegations contained in Paragraphs 1 through 68 of his Complaint as if fully set forth herein.

70. Mr. Hart has performed service in a uniformed service within the meaning of USERRA.

71. Mr. Hart sought inpatient hospitalization and medical treatment for his service-related disabilities through the VA.

72. When Mr. Hart requested a leave of absence to obtain this treatment, Defendant denied him retention in employment and/or reemployment.

73. Mr. Hart's prior military service and service-related disabilities were motivating factors in his termination.

74. Defendant willfully discriminated against and terminated Plaintiff as a result of his service-related disabilities.

WHEREFORE, Plaintiff Christopher Hart requests that the Court award him damages in

the form of lost back pay, front pay, compensatory damages, liquidated damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

## SPECIFIC PRAYER FOR INJUNCTIVE RELIEF

Plaintiff Christopher Hart respectfully requests that the Court:

A.  Grant a permanent injunction enjoining Defendant, its agents, officers, successors, or assigns, and all persons acting in concert or participation with it, from engaging in employment discrimination based on disability or service member status.

B.  Order Defendant to correct all entries in the personnel file of Plaintiff Christopher Hart that are critical of his performance for reasons related to disabilities he sustained while serving in the US Army in Iraq.

C.  Order Defendant to institute and carry out polices, practices, and programs that provide equal employment opportunities for Veterans and service members.

D.  Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for people with disabilities, including the need to provide reasonable accommodations to employees without retaliation.

E.  Grant such other and further relief as the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMAND

Plaintiff Christopher Hart hereby demands a jury trial on all matters so triable under the laws and Constitution of the United States and the State of Maine.

Dated:   October 21, 2014                    */s/ Laura H. White*

                                             _____
                                             Laura H. White, Bar No. 4025
                                             *Attorney for Plaintiff*
                                             BERGEN & PARKINSON, LLC
                                             62 Portland Rd., Suite 25
                                             Kennebunk, ME 04043
                                             (207) 985-7000
                                             <u>lwhite@bergenparkinson.com</u>

                                             */s/ William J. Gallitto*

                                             _____
                                             William J. Gallitto, Bar No. 4969
                                             *Attorney for Plaintiff*
                                             BERGEN & PARKINSON, LLC
                                             62 Portland Rd., Suite 25
                                             Kennebunk, ME 04043
                                             (207) 985-7000
                                             <u>wgallitto@bergenparkinson.com</u>